# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**YOSET M. PAGAN, individually and on
behalf of all others similarly situated,**
        **Plaintiff,**

    **v.**                              **Case No.  13-C-1429**

**INTEGRITY SOLUTION SERVICES, INC.,**
        **Defendant.**

## DECISION AND ORDER

Yoset Pagan filed a complaint alleging that the defendant, Integrity Solution Services, Inc. ("Integrity"), violated the Fair Debt Collection Practices Act ("FDCPA") and the Wisconsin Consumer Act ("WCA").  Integrity is a debt collector, and Pagan's claim arises out of a letter it sent to her in which it sought to collect an unpaid cellular telephone bill on behalf of AT&T.  In the letter, Integrity stated that the balance due on Pagan's account was $360.90 and that Pagan owed an additional "AT&T fee" in the amount of $64.96.  Pagan alleges that this fee, which is 18% of the balance due on the account, is a "collection fee" that AT&T charges to customers when it refers an account to a third party for collection.  Pagan claims that, under Wisconsin law, it was illegal for AT&T to charge such a fee.  Pagan further claims that, when Integrity sent its letter to her attempting to collect the illegal fee, it violated both the FDCPA and the WCA.[1]

Integrity has filed a motion to dismiss Pagan's complaint and to compel arbitration. The basis for this motion is an arbitration clause that appears in the "wireless customer

---

[1]In her original complaint, Pagan named AT&T as a defendant.  However, Pagan and AT&T have settled their dispute, which leaves Integrity as the sole defendant.

agreement" that Pagan entered into when she became an AT&T customer.[2] Integrity is not a signatory to this agreement, and it does not contend that it is a third-party beneficiary of the agreement. However, Integrity contends that the doctrine of equitable estoppel prevents Pagan from avoiding the arbitration clause.

In arguing that equitable estoppel entitles it to enforce the arbitration clause, Integrity cites a district-court case stating that equitable estoppel allows a nonsignatory to compel arbitration in two circumstances:

> First, equitable estoppel applies when the signatory "must rely on the terms of the written agreement in asserting its claim" against a non-signatory. [MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999).] Thus, "[w]hen each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." Id. Second, equitable estoppel also applies "when the signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id.

Hoffman v. Deloitte & Touche, LLP, 143 F. Supp. 2d 995, 1004–05 (N.D. Ill. 2001). Integrity proceeds to apply this district-court case as though it contained black-letter law. However, district-court cases do not have precedential authority, see, e.g., Matheny vv. United States, 469 F.3d 1093, 1097 (7th Cir. 2006), and Integrity does not show that the statement in Hoffman is an accurate summary of the doctrine of equitable estoppel as it is understood by the Wisconsin Supreme Court, the Seventh Circuit, or the Supreme Court of the United States.

---

[2]The wireless customer agreement is attached to the Declaration of Stacie Dobbs, which was filed by AT&T before it exited the case. See ECF No. 20. The plaintiff has not objected to my considering the agreement in connection with Integrity's motion.

An initial question is whether the issue of equitable estoppel is governed by state or federal law. The parties do not address this question. However, federal appellate courts have held that the issue is governed by state law. See Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 261–62 & n.9 (5th Cir. 2014) (collecting cases). The parties have not cited, and I have not found, any Wisconsin cases addressing the issue of when a nonsignatory to an agreement may use equitable estoppel to enforce an arbitration clause that appears in that agreement. However, the general elements of equitable estoppel under Wisconsin law are the following: (1) action or non-action; (2) on the part of one against whom estoppel is asserted; (3) which induces reasonable reliance thereon by the other, either in action or non-action; (4) which is to the relying party's detriment. See, e.g., Affordable Erecting, Inc. v. Neosho Trompler, Inc., 291 Wis. 2d 259, 275 (2006). In the present case, none of these elements is present. Pagan has not taken any action or non-action that has induced reasonable reliance by Integrity or that has caused Integrity any detriment. Thus, if the issue of equitable estoppel is governed by state law, Pagan would not be estopped from avoiding the arbitration clause.

Turning to federal law, the parties have not cited, and I have not found, any cases decided by the Supreme Court that address the question of when a nonsignatory to an agreement can use equitable estoppel to enforce an arbitration clause that appears in that agreement. In Arthur Andersen LLP v. Carlisle, the Supreme Court held that "traditional principles of state law," including estoppel, could be applied to allow a nonsignatory to enforce an arbitration clause. 556 U.S. 624, 631 (2009). However, the Court did not identify the circumstances under which it would be appropriate to apply equitable estoppel to prevent a party from avoiding arbitration with a nonsignatory. Id. at 632 ("[W]e need not

decide here whether the relevant state contract law recognizes equitable estoppel as a ground for enforcing contracts against third parties, what standard it would apply, and whether petitioners would be entitled to relief under it. These questions have not been briefed before us and can be addressed on remand.").

There is one case from the Seventh Circuit that addresses the question of when a nonsignatory to an agreement can use equitable estoppel to enforce an arbitration clause that appears in the agreement, Hughes Masonry Co., Inc. v. Greater Clark County Schol Building Corp., 659 F.2d 836 (7th Cir. 1981). In that case, two entities, Clark and Hughes Masonry, entered into a contract under which Hughes would provide masonry services in connection with the construction of two school buildings. This contract contained an arbitration clause. The contract stated that a nonsignatory, J.A., would be the construction manager for the project. After a dispute arose between Clark, Hughes, and J.A., Hughes filed an action in federal court. Once J.A. was made a party to that action, it filed a motion to compel arbitration, relying on the arbitration clause in the contract between Clark and Hughes. Hughes argued that because J.A. was not a party to the contract, it could not invoke the arbitration clause. The Seventh Circuit held that Hughes was equitably estopped from asserting this argument "because the very basis of Hughes' claim against J.A. is that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes." Id. at 838. The court explained:

> Hughes has characterized its claims against J.A. as sounding in tort, i. e., intentional and negligent interference with contract. In substance, however, Hughes is attempting to hold J.A. to the terms of the Hughes-Clark agreement. Hughes' complaint is thus fundamentally grounded in J.A.'s alleged breach of the obligations assigned to it in the Hughes-Clark agreement. Therefore, we believe it would be manifestly inequitable to permit Hughes to both claim that J.A. is liable to Hughes for its failure to perform the

4

> contractual duties described in the Hughes-Clark agreement and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause. "In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage."

Id. at 838–29 (footnote and citation omitted, alterations in original).

The present case is nothing like Hughes Masonry. Pagan is not trying to hold Integrity to the terms of the wireless agreement she entered into with AT&T or otherwise enforce that agreement. Rather, Pagan alleges that Integrity violated state and federal statutes when it sent a collection letter to her in which it attempted to collect an illegal charge. It is true that AT&T imposed the charge pursuant to the terms of the wireless agreement, but that fact does not somehow make it inequitable for Pagan to avoid the arbitration clause in the agreement. Pagan is not relying on the agreement when it works to her advantage and repudiating it when it works to her disadvantage. Rather, she is not relying on the agreement at all. She is relying on state and federal statutes that prohibit debt collectors such as Integrity from attempting to collect invalid or illegal debts.[3]

Thus, no binding cases support Integrity's argument that it is entitled to enforce the arbitration clause in the AT&T agreement. But might the Seventh Circuit, the Supreme Court, or the Wisconsin Supreme Court expand the doctrine of equitable estoppel to cover the present case? Integrity argues that it should be allowed to enforce the arbitration clause in the AT&T agreement because Pagan's claims are "intertwined with" the AT&T agreement and because they are "interdependent with" her claims against AT&T. See

---

[3]For purposes of the present motion, I express no view on whether the collection charge is invalid or illegal under state law or whether Integrity's attempt to collect that charge was unlawful under either the FDCPA or the WCA.

Reply Br. at 3–5. In arguing that Pagan's claims are intertwined with the AT&T agreement, Integrity relies on cases following <u>Hughes Masonry</u>.[4] However, as I have already discussed, <u>Hughes Masonry</u> does not support Integrity's argument, as Pagan is not trying to enforce the AT&T agreement against Integrity. Moreover, Integrity has not shown that it would be appropriate to expand <u>Hughes Masonry</u> to cover any case in which a claim against a nonsignatory could be said to be "intertwined with" the agreement containing the arbitration clause.

Integrity's argument that Pagan should be forced to arbitrate because her claims are "interdependent with" her claims against AT&T is based on the second situation described in <u>Hoffman</u>—"when the signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 143 F. Supp. 2d at 1005. This statement in <u>Hoffman</u> is based on a district-court case from Alabama. <u>Hoffman</u> cites <u>MS Dealer</u> as support for its statement that the second situation gives rise to equitable estoppel. <u>MS Dealer</u>, in turn, relies on <u>Boyd v. Homes of Legend, Inc.</u>, 981 F. Supp. 1423 (M.D. Ala. 1997), and it is in <u>Boyd</u> that we find the language that ultimately made its way into <u>Hoffman</u>. See <u>Boyd</u>, 981 F. Supp. at 1433 ("The second factual setting in which application of equitable estoppel is warranted arises when the signatory raises allegations of, not merely parallel or similar, but substantially

---

[4] <u>Hughes Masonry</u> is the basis of the first of the two situations described in <u>Hoffman</u>, Integrity's district-court case. <u>Hoffman</u> states that the first situation arises "when the signatory must rely on the terms of the written agreement in asserting its claim against a non-signatory." <u>Hoffman</u>, 143 F. Supp. 2d at 1004–05. In support of this statement, <u>Hoffman</u> cites <u>MS Dealer Services Corp. v. Franklin</u>, a case from the Eleventh Circuit. See 177 F.3d 942 (11th Cir. 1999). <u>MS Dealer</u>, in turn, relies on an earlier Eleventh Circuit case, <u>Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.</u>, 10 F.3d 753 (11th Cir. 1993). Finally, <u>Sunkist</u> relies on <u>Hughes Masonry</u>. See 10 F.3d at 757.

6

interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."). Boyd does not explain why it would be inequitable to allow a plaintiff to avoid an arbitration clause in litigation alleging "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id. at 1433. Instead, it merely asserts that equitable estoppel applies in this circumstance. In MS Dealer, the Eleventh Circuit stated that the second circumstance must give rise to equitable estoppel to avoid rendering any arbitration between the signatories "meaningless." 177 F.3d at 947. But it is not clear why allowing the claim against the nonsignatory to proceed outside of arbitration would render meaningless any arbitration that occurs between the signatories. After all, regardless of any judgment that might be entered against the nonsignatory outside of arbitration, the arbitration between the signatories would still be binding on them. Moreover, I do not see how it could be considered inequitable for a signatory to an arbitration agreement to sue a nonsignatory to that agreement outside of arbitration on a claim that is interdependent with the arbitrable claim. In such an situation, the signatory would not be taking unfair advantage of the nonsignatory or otherwise be engaging in inequitable conduct.

Because the second basis for equitable estoppel described in Hoffman does not rest on a solid footing, I will not apply it. Rather, I conclude that Pagan could be equitably estopped from denying that her claim against Integrity is subject to arbitration under the AT&T wireless agreement only if circumstances similar to those present in Hughes Masonry were present here—i.e., only if Pagan were seeking to enforce provisions of the wireless agreement against Integrity. As Pagan is not seeking to enforce provisions of that

agreement against Integrity, Pagan is not subject to equitable estoppel. Accordingly, Integrity's motion to dismiss the complaint and compel arbitration will be denied.

For the reasons stated, **IT IS ORDERED** that Integrity's motion to dismiss the complaint and compel arbitration is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's unopposed motion to stay the motion to certify a class (ECF No. 6) is **GRANTED**. That motion will be stayed until a time decided on at the scheduling conference held pursuant to Federal Rule of Civil Procedure 16(b).

Dated at Milwaukee, Wisconsin, this 8th day of September, 2014.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge